# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | |
|---|---|
| THANG HONG LUU, CHIN BA NGO, HUNG VAN NGUYEN, NO HAI LE, HAI THANH PHAN, TUYEN VAN VU, HOP DUC TON, GIANG DUC TRAN, GIANGSY NGHIEM, NHAM VAN HO, HUYNH KHAC BUI, SY DUNG NGUYEN, DUC MINH NGUYEN, and JOHN DOES 1-43, <br><br>　　　　　Plaintiffs, <br><br> vs. <br><br> INTERNATIONAL INVESTMENT TRADE AND SERVICE GROUP A/K/A INTERSERCO, et al., <br><br>　　　　　Defendants. | § § § § § § § § § § § § § § § § § § § §　CIVIL ACTION NO. 3:11-cv-00182 |

## DEFENDANT INTERSERCO'S MOTION TO DISMISS

Charles S. Kelley
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, Texas 77002-2730
713.238.2634
713.238.4634 (Facsimile)

ATTORNEYS FOR DEFENDANT
INTERSERCO

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

STANDARDS OF REVIEW ..................................................................................2

FACTUAL ALLEGATIONS ..................................................................................3

ARGUMENT ..........................................................................................................5

I.     Plaintiffs Fail to Provide Any Support at All for Their Asserted Theories of Imputed Liability ........................................................................................5

     A.     Plaintiffs' Asserted Principles of Attribution Are Merely Unsupported Conclusory Labels, and Any Claims Based on Them Should Be Dismissed........5

          1.     Actual and Apparent Authority ..................................................6

          2.     Respondeat Superior ..................................................................7

          3.     Ratification ................................................................................8

          4.     Vice-Principal ............................................................................9

     B.     Plaintiffs Negligent Hiring Claim Must Fail Because Plaintiffs Allege No Employment Relationship and Because Plaintiffs' Claims Arise Under Statutes, Not the Common Law ..................................................................10

     C.     Plaintiffs' Conspiracy Claim Must Be Dismissed Because Plaintiffs Merely Recite the Elements of Conspiracy Without Any Supporting Factual Allegations ................................................................................11

II.     The Employers' Alleged Mistreatment of Plaintiffs Fails to Meet Any Applicable Standard of Forced Labor or Involuntary Servitude ..........................................14

     A.     Plaintiffs' ATS Claim Fails Because Plaintiffs Do Not Identify Any International Norms That Would Be Violated By the Alleged Conduct..............15

     B.     Plaintiffs' Constitutional Claim Fails Because The Thirteenth Amendment Does Not Create a Private Right of Action and Because the Facts Alleged Do Not State a Claim for Involuntary Servitude ..................................................18

     C.     Plaintiffs Fail to Allege Any Labor Conditions That Violate the TVPRA ..........20

III.     Plaintiffs Fail to Allege Any Facts Showing a Culpable Mental State on Which to Base Their TVPRA and Common Law Fraud Claims ..................................................25

     A.     The TVPRA Claim Fails Because Interserco Could Not Have Foreseen Plaintiffs' Working Conditions, on the Facts Alleged ..........................................26

     B.     Plaintiffs' Allegations Fall Far Short of the Heightened Standard for Pleading Fraud Claims ..................................................................................28

CONCLUSION ..................................................................................................30

-i-

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adhikari v. Daoud & Partners,*
    697 F. Supp. 2d 674 (S.D. Tex. 2009).................................................................27

*Ashcroft v. Iqbal,*
    556 U.S. 662 (U.S. 2009) ................................................................3, 4, 6, 26

*Baptist Mem'l Hosp. Sys. v. Sampson,*
    969 S.W.2d 945 (Tex. 1998) ...........................................................................7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................2, 11, 12, 13

*Bennet v. Reynolds,*
    315 S.W.3d 867 (Tex. 2010) ...........................................................................9

*Desilva v. N. Shore-Long Island Jewish Health Care Sys., Inc.,*
    No 10-CV-1341 (JFB) (ETB), 2012 U.S. Dist. LEXIS 30597 (E.D.N.Y. March 7,
    2012)...........................................................................................22, 23, 24

*Doe v. Keane,*
    658 F. Supp. 216 (W.D. Mich. 1987) ..............................................................18

*ERI Consulting Engineers, Inc. v. Swinnea,*
    318 S.W.3d 867 (Tex. 2010) .........................................................................13

*Facciolla v. Linbeck Constr. Corp.,*
    968 S.W.2d 435 (Tex. App.—Texarkana 1998, no pet.) . No.............................8, 9

*Folmar v. Terra Renewal, LLC,*
    No. H-09-3647, 2011 U.S. Dist. LEXIS 14840 (S.D. Tex. Feb. 14, 2011).............8

*Greenstone v. Cambex Corp.,*
    975 F.2d 22 (1st Cir. 1992).........................................................................29

*Harold H. Huggins Realty, Inc. v. FNC, Inc.,*
    634 F.3d 787 (5th Cir. 2011) .........................................................................2

*Household Credit Servs., Inc. v. Driscol,*
    989 S.W.2d 72 (Tex. App.—El Paso 1998, pet. denied)..................................6, 7

*Johnson v. Blue Cross/Blue Shield,*
    375 F. Supp. 2d 545 (N.D. Tex. 2005) ...........................................................10

*Limestone Prods. Distrib. v. McNamara*,
   71 S.W.3d 308 (Tex. 2002) ............................................................. 8

*Lowe v. Wellcare Health Plans, Inc.*,
   2009 U.S. Dist. LEXIS 87378 (N.D. Tex. Aug. 21, 2009) ..................... 19

*Pierce v. United States*,
   146 F.2d 84 (5th Cir. 1944) ............................................................ 25

*Pollock v. Williams*,
   322 U.S. 4 (1944) ........................................................................... 25

*Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*,
   336 S.W.3d 764 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ............. 6

*Roe v. Bridgestone Corp.*,
   492 F. Supp. 2d 988 (S.D. Ind. 2007) ................................... 16, 17, 18

*Sanders v. A.J. Canfield Co.*,
   635 F. Supp. 85 (N.D. Ill. 1986) ..................................................... 18

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*,
   435 S.W.2d 854 (Tex. 1968) ............................................................ 14

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) ................................................................. 15, 16

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
   365 F.3d 353 (5th Cir. 2004) .................................................. 2, 28, 29

*Torch Liquidating Trust v. Stockstill*,
   561 F.3d 377 (5th Cir. 2009) ............................................................. 2

*Tuchman v. DSC Comm'ns Corp.*,
   14 F.3d 1061 (5th Cir. 1994) ........................................................... 28

*TXI Transp. Co. v. Hughes*,
   306 S.W.3d 230 (Tex. 2010) ...................................................... 10, 11

*U.S. v. Dann*,
   652 F.3d 1160 (9th Cir. 2011) ............................................... 21, 22, 24

*United States v. Kozminski*,
   487 U.S. 931 (1988) ....................................................................... 19

*Vasudevan Software, Inc. v. Tibco Software Inc.*,
   No. C11-06638 RS, 2012 U.S. Dist. LEXIS 69952 (N.D. Cal. May 18, 2012) ...... 26

*Vietnamese Fishermen's Ass'n. v. Knights of Ku Klux Klan,*
    518 F. Supp. 993 (S.D. Tex. 1981)..................................................................18

*Watson v. Graves,*
    909 F.2d 1549 (5th Cir. 1990) .....................................................................19

## STATUTES

18 U.S.C. § 1581 ...............................................................................................20

18 U.S.C. § 1584 ...............................................................................................20

18 U.S.C. § 1589 ..........................................................................................20, 21

18 U.S.C. § 1590 ..........................................................................................20, 26

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2) .........................................................................................2

Fed. R. Civ. P. 9(b).........................................................................................2, 28

## INTRODUCTION

Plaintiffs unjustifiably blame Interserco (and the other Defendants) for the alleged misconduct of two U.S. companies, Coast to Coast Resources, Inc. and ILP Agency, LLC ("the Employers"). But the allegations of the First Amended Complaint ("Complaint") demonstrates that there is no justification for doing so, and Interserco therefore files this Motion to Dismiss Under Rule 12(b)(6).[1] First, Plaintiffs assert numerous legal theories of attribution but fail to allege facts to support any of them. These unsupported legal conclusions must be disregarded, and, to the extent Plaintiffs claims rely on them, those claims should be dismissed. Second, the facts alleged are not sufficient to support a claim for forced labor under either U.S. or international law. The hallmarks of forced labor—withholding wages, confinement, and coercion—are all absent. Instead, when the contracts were allegedly prematurely terminated, Plaintiffs wanted to continue working. Third and finally, Plaintiffs fail to allege any basis from which to conclude that Interserco had foreknowledge of the Employers' alleged misconduct. Both the asserted fraud and trafficking claims require knowledge, and the Complaint lacks

---

[1] The other Defendants have not been served with process, therefore only Interserco files this Motion. Upon receiving service, it is anticipated that other remaining Defendants will join this Motion, given that the allegations against all Defendants are the same.

1

any relevant factual allegations. For all these reasons, the claims against Interserco should be dismissed.

## STANDARDS OF REVIEW

The Complaint should be dismissed under Rule 12(b)(6) because Plaintiffs have failed to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and failed to allege fraud "with particularity," Fed. R. Civ. P. 9(b). *E.g., Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 380 (5th Cir. 2009) (affirming dismissal under Rule 12(b)(6) for failure to allege injury). To satisfy Rule 8, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In this regard, the facts alleged must move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 679 (2009)). "To satisfy Rule 9(b)'s pleading requirements [for fraud], the plaintiffs must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Courts generally accept allegations in a

complaint as true, but this "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 566 U.S. at 678.

## <u>FACTUAL ALLEGATIONS</u>

The following statement assumes the truth of the facts alleged in Plaintiffs' Complaint:

Plaintiffs responded to advertisements in Vietnam for welding jobs in the United States, and sought to obtain those jobs through Defendants, including Interserco. First Am. Compl. [Dkt. No. 1] at ¶ 23. Plaintiffs were required to pay fees to Defendants and a portion of their wages to U.S. companies in order to travel to the U.S., obtain assistance with visas, be given food and lodging, and be transported to and from their job site. *Id.* Plaintiffs accepted the offer, knowing the cost, because the contracts were long term and paid $15/hour, which Plaintiffs considered "high paying." *Id.* at ¶¶ 23, 38. Plaintiffs do not allege they were unaware of the terms of the agreement or that their acceptance of the terms was in any way coerced. *See generally id.* at ¶ 23.

Once they arrived in the U.S., Plaintiffs' were met by representatives of Coast to Coast Resources, Inc. and ILP Agency, LLC (the "Employers"). *Id.* at ¶ 24. Plaintiffs found their housing to be in "deplorable" condition. *Id.* at ¶ 24. Among other things, the housing apparently lacked the necessary equipment to permit Plaintiffs to access the Internet. *Id.* at ¶ 25. The housing was near the

"robust" Vietnamese-American community of the Greater Houston Area, but Plaintiffs still felt isolated. *Id.* The promised transportation to the work place was provided, as was weekly transportation to a grocery store, but the Plaintiffs were left to their own devices if they desired transportation anywhere else. *Id.*

Plaintiffs lacked opportunities to learn English, and the driver who drove them to work and the grocery store did not speak Vietnamese. *Id.* Plaintiffs did not have access to newspapers, Internet, or locals who spoke the same language. *Id.* Plaintiffs also allege they were threatened with violence or arrest if they talked to "outsiders." *Id.* Plaintiffs do not allege who made these threats, nor what, if any, affiliation that person had with the Employers, Interserco, or any other defendant. *See generally id.* Plaintiffs also do not allege that these threats affected their decision to earn the money promised them. *See generally id.*

Plaintiffs were terminated after eight months of work. *Id.* at ¶ 26. "Plaintiffs asked questions about the guaranteed work term of thirty months," but their Employers did not answer. *Id.* Plaintiffs sued the Employers and obtained an agreed judgment of $60,178,000.00. *Id.* at 1, n.1. Plaintiffs then sued Defendants in this case. *See generally* Compl. [Dkt. No. 1]; First Am. Compl. [Dkt. No. 29].

## ARGUMENT

**I.    Plaintiffs Fail to Provide Any Support at All for Their Asserted Theories of Imputed Liability.**

Plaintiffs rely on several principles of attribution, including actual and apparent authority, ratification, respondeat superior, negligent hiring, vice-principal, and conspiracy in their unjustified effort to shift blame for their alleged injuries from the Employers to Interserco.[2] First Am. Compl. [Dkt. No. 29] at ¶¶ 36-41. But Plaintiffs have alleged no facts to support the conclusion that any one of those principles applies in this case. As a result, Plaintiffs' fifth and sixth "Causes of Action" each fail because they have no basis in the facts alleged.

**A.    Plaintiffs' Asserted Principles of Attribution Are Merely Unsupported Conclusory Labels, and Any Claims Based on Them Should Be Dismissed.**

Plaintiffs supply a long list of legal doctrines—actual or apparent authority, ratification, respondeat superior, and vice-prinicple—but Plaintiffs' allegations are devoid of facts supporting the key elements of these doctrines. Instead, Plaintiffs merely "assert that Coast to Coast Resources, Inc., ILP Agency, LLC," and several named individuals (who are never referred to elsewhere in the Complaint) "are

---

[2] Plaintiffs' sixth Cause of Action is identified as "actual and apparent authority / ratification / negligent hiring / vice-principal," and the related allegations further recite "*respondeat superior*." Plaintiffs' fifth Causes of Action is "Conspiracy and Civil Conspiracy." Of these, only negligent hiring and conspiracy are recognized as causes of action under Texas law, though both are derivative claims and therefore require underlying torts. The rest are merely legal doctrines.

employees and/or agents of Defendants." First Am. Compl. [Dkt. No. 29] at ¶ 41. These unsupported legal conclusions are entitled to no credit in this Court's analysis of the claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 1.    Actual and Apparent Authority

In order for either actual or apparent authority to apply, Plaintiffs must allege facts supporting an agency relationship between Interserco and the Employers. *See, e.g., Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 783 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (describing "actual and apparent authority" as theories by which a "principal [may be] liable for the acts of another *acting as its agent*") (emphasis added). Plaintiffs allege no facts to support the existence of an agency relationship between Interserco and the Employers, and this is fatal to any claim based on actual or apparent authority.

"Authorization to act and control of the action are the two essential elements of agency." *Reliant Energy Servs.*, 336 S.W.3d at 783; *see Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 86 (Tex. App.—El Paso 1998, pet. denied) (describing "the right of control" as "the most fundamental" factor in determining the existence of an agency relationship). For example, in *Household Credit*

*Services*, the court found an agency relationship between a creditor and a debt collector where the creditor's "Agency Work Standards" set forth specific timelines and restrictions over the agent's debt collection efforts on the creditor's behalf, required the assignment of dedicated employees working only on the creditor's accounts, and gave the creditor review and approval rights. 989 S.W.2d at 86.

Even entertaining reasonable inferences from the facts alleged, there is no basis from which to conclude that Interserco controlled the manner in which the Employers provided housing or transportation nor the manner in which Plaintiffs' employment was terminated. Most importantly, there are absolutely no allegations identifying who threatened Plaintiffs, let alone that Interserco ever authorized or controlled such acts. Since control and authorization are requirements for agency, and neither of these facts is sufficiently alleged, there can be no agency. Without agency, there can be no apparent or actual authority.

### 2. Respondeat Superior

The lack of control is similarly fatal to any assertion of respondeat superior. The doctrine of respondeat superior subjects a principal to liability for the acts of an ***agent or employee***. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). As already established, Plaintiffs allege no facts that could support the conclusion that the Employers or the unidentified individuals who allegedly

threatened Plaintiffs acted as Interserco's agents. Nor do Plaintiffs allege any facts to support the conclusion that those entities or individuals are employees of Interserco, which requires "the right to control the progress, details, and methods of operations of the [employees'] work." *Limestone Prods. Distrib. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002).

### 3.    Ratification

Plaintiffs similarly failed to allege any facts to support the inference that Interserco "retain[ed] the benefits of [an unauthorized] transaction after acquiring full knowledge" of the transaction, which is required for ratification. *Folmar v. Terra Renewal, LLC*, No. H-09-3647, 2011 U.S. Dist. LEXIS 14840, *17 (S.D. Tex. Feb. 14, 2011) (quoting *Land Title Co. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980)); *see Facciolla v. Linbeck Constr. Corp.*, 968 S.W.2d 435, 442 (Tex. App.—Texarkana 1998, no pet.) (finding no retained benefit where the allegedly ratified act neither increased nor decreased the value of an investment for the purportedly ratifying investor). No allegations suggest Interserco received any benefits from the Employers' alleged misconduct after learning of the Employers' acts. The only benefit Interserco allegedly received (*i.e.*, the fees allegedly paid) was received ***before*** the alleged acts took place, and retaining those fees cannot be a ratification of those acts. *See Folmar*, 2011 U.S. Dist. LEXIS 14840 at *18-19 (denying summary judgment that a settlement agreement was ratified when the

benefit, grass seed that allegedly formed part of the settlement offer, was apparently received "many months *before* the settlement offer was even made") (emphasis added). Moreover, Plaintiffs never allege that Interserco "received any greater return . . . or suffered fewer losses" as a result of the Employers' alleged conduct. *Facciolla*, 968 S.W.2d at 442. Therefore the facts do not support applying the doctrine of ratification.

### 4. Vice-Principal

Finally, there can be no serious contention that any of the Employers or named individuals are adequately alleged to be vice-principals. Even if the Court were to credit conclusory allegations of agency or employment, a vice-principal "represents the corporation in its corporate capacity, and includes persons who have authority to employ, direct, and discharge servants of the master, and those to whom a master has confided the management of the whole or a department or division of his business." *Bennet v. Reynolds*, 315 S.W.3d 867, 883 (Tex. 2010) (quoting *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999)). There are no allegations whatsoever to indicate that any of the alleged wrongdoers were corporate officers of Interserco, had the power to hire, fire or direct the employees of Interserco, undertake nondelegable duties, or manage the affairs of an entire division of Interserco' business enterprise. *See id.* at 884 (citing *Chrysler*

9

*Insurance Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 250 n. 1 (Tex.2009)).

### B. Plaintiffs Negligent Hiring Claim Must Fail Because Plaintiffs Allege No Employment Relationship and Because Plaintiffs' Claims Arise Under Statutes, Not the Common Law.

Plaintiffs fail to allege key elements of a claim for negligent hiring, and the claim should therefore be dismissed. First, Plaintiffs' assertion that Defendants, collectively, should be held liable for the "tortuous [sic] acts committed by Son Dinh Duong, Toan Tien Phung, Dung Tri Nguyen, Phung Thi Nguyen, and Vo Hoang Nu" fails because Plaintiffs never allege any acts, tortious or otherwise, by these individuals. *See Johnson v. Blue Cross/Blue Shield*, 375 F. Supp. 2d 545, 550 (N.D. Tex. 2005) ("[A]n employer cannot be held liable for negligently hiring an employee unless the employee committed an actionable tort.") (collecting cases). Second, Plaintiffs' negligent hiring claim must fail because Plaintiffs never allege any facts to suggest that Interserco proximately caused Plaintiffs harm by hiring the named individuals, *see TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 241 (Tex. 2010) ("In a negligent-hiring . . . claim, a plaintiff must show that the risk that caused the . . . hiring to be negligent also proximately caused plaintiff's injuries."), nor that Interserco hired them at all. Apart from conclusory assertions that the named individuals and the Employers "are employees and/or agents of Defendants," First Am. Compl. [Dkt. No. 29] at ¶ 41, the Complaint is devoid of

10

any allegations about the nature of the relationship between Interserco and the named individuals.

### C. Plaintiffs' Conspiracy Claim Must Be Dismissed Because Plaintiffs Merely Recite the Elements of Conspiracy Without Any Supporting Factual Allegations.

Plaintiffs' claims of conspiracy are bare assertions without any factual support and should therefore be dismissed. Plaintiffs apparently assert that Defendants conspired with each other to commit the alleged acts. *See* First Am. Compl. [Dkt. No. 29] at ¶ 37 (alleging "Defendants are joint [sic] and severally liable for all acts done by any of them"). Plaintiffs also refer to the Employers as "co-conspirators." *Id.* at ¶¶ 1, 23, 24, 26, 38 & n.1. The actual allegations, however, suggest only that each Plaintiff entered into a transaction with one of the Defendants. *Id.* at ¶ 23. There are no allegations showing any agreement (unlawful or otherwise) between Defendants, nor, as discussed above, among Defendants and the Employers.

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court of the United States declared that neither a bare assertion of conspiracy nor an allegation of parallel conduct were sufficient to support a claim of conspiracy.[3] *See* 550 U.S. at 556-57

---

[3] The Supreme Court was specifically addressing a conspiracy to restrain trade under section 1 of the Sherman Act, but the necessary facts absent from the complaint were the same as here—the plaintiffs must plead facts to show an agreement between parties. *See Twombly*, 550 U.S. at 548-49 ("The question in

("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). The Court held that, "without some further factual enhancement," a "naked assertion of conspiracy . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 557. The rejected claim was based solely "on descriptions of parallel conduct and not on any independent allegation of actual agreement among the [defendants]," *id.* at 564, which the Court concluded were "not suggestive of conspiracy." *Id.* at 567.

Plaintiffs' conspiracy claim, like the claim dismissed in *Twombly*, is based solely on allegations that the Defendants engaged in parallel conduct. Plaintiffs generally allege that "Defendants" engaged in several activities, such as advertising, meeting with Plaintiffs, arranging for visas, and receiving payment from Plaintiffs. First Am. Compl. [Dkt. No. 29] at ¶ 23. While this suggests Defendants each engaged in the same types of conduct, it does not suggest that they did so jointly or as part of an agreement between them. Moreover, nothing else in the complaint suggests that Defendants were anything but independent actors in the same market for labor export and consulting services. These sorts of

---

this putative class action is whether a § 1 complaint can survive a motion to dismiss when it alleges that major telecommunications providers engaged in certain parallel conduct unfavorable to competition, absent some factual context suggesting agreement, as distinct from identical, independent action."). There were no such allegations in *Twombly*, and there are none here, either.

allegations were insufficient in *Bell Atlantic v. Twombly*, and they are insufficient here.

Apart from these allegations, Plaintiffs merely state the requirements for conspiracy and assert that Defendants, including Interserco, meet them without alleging facts to support their legal conclusions. *See* First Am. Compl. [Dkt. No. 29] at ¶ 37. Plaintiffs fail to allege facts supporting a "meeting of minds" on any "object or course of action," which is a requirement for a claim of conspiracy. *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 975 (Tex. 2010). Further, conspiracy requires specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Id*. At best, the facts alleged show that Interserco intended Plaintiffs to legally work for the Employers in the United States. *See, e.g.*, First Am. Compl. [Dkt. No. 29] at ¶ 23 ("Defendants would arrange for the appropriate visas for the Plaintiffs to work in the United States . . . ."). This is a lawful purpose, and nothing in the Complaint suggests Interserco (or any other Defendant) intended it to be accomplished by unlawful means. Plaintiffs fail to adequately allege facts supporting necessary elements of their conspiracy claim, and that claim must be dismissed. *See Twombly* 550 U.S. at 556-57.

In addition to inadequately alleging a conspiracy, Plaintiffs have failed to state valid claims either for common law fraud or under the TVPRA, the ATS, and

the Thirteenth Amendment to the U.S. Constitution. The crux of conspiracy is the damage resulting from commission of a wrong which injures another, rather than the conspiracy itself. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968). Without sufficiently alleging the unlawful acts that support these causes of action, Plaintiffs cannot sustain their claim that Interserco was part of an unlawful conspiracy to commit those acts, and the conspiracy claim should be dismissed for that reason, as well.

## II.   The Employers' Alleged Mistreatment of Plaintiffs Fails to Meet Any Applicable Standard of Forced Labor or Involuntary Servitude.

All of Plaintiffs' alleged deprivations occur after they arrived in the United States and at the hands of their Employers, but Plaintiffs fail to justify holding Interserco or the other Defendants responsible for the Employers' conduct, as explained above. For that reason alone, this Court should dismiss the claims for forced labor or involuntary servitude under the Alien Tort Statute, and the Thirteenth Amendment and the trafficking claim under the TVPRA. These claims are further unsubstantiated because the alleged acts of the Employers, however reprehensible, do not rise to the level of forced labor or involuntary servitude under either domestic or international law. As a result, this Court should dismiss all claims against Interserco.

14

### A.    Plaintiffs' ATS Claim Fails Because Plaintiffs Do Not Identify Any International Norms That Would Be Violated By the Alleged Conduct.

Plaintiffs fail to state a claim under the Alien Tort Claims Act (28 U.S.C. § 1350), also called the Alien Tort Statute ("ATS"), because Plaintiffs fail to identify any norm of international law "sufficiently definite to support a cause of action" that prohibits the conduct alleged in their Complaint. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004). The ATS is a jurisdictional statute, only, which permits courts to hear claims arising from violations of international norms, *id.* at 729, and it is Plaintiffs' obligation to identify such a norm or rule. *See id.* at 736 ("[Plaintiff] certainly cites nothing to justify the federal courts in taking his broad rule [prohibiting any unauthorized arrest] as the predicate for a federal lawsuit [under the ATS], …."). They have not done so, and their ATS claim must therefore be dismissed.

In cases where ATS claims based on forced labor have been allowed, the conduct alleged is generally so heinous that there is no dispute that the allegations, assumed as true, violate international law. In *Doe v. Nestle S.A.*, for example, the plaintiffs were "locked on their respective farms . . . and monitored at night by guards armed with guns and whips" who "threatened [the plaintiffs] with severe beatings from whips and tree branches, being forced to drink urine, and having their feet cut open." 748 F. Supp. 2d 1057, 1075 (C.D. Cal. 2010). Moreover, the

15

plaintiffs "were not paid for their work, were given inadequate amounts of food, and were forced to sleep in groups in locked rooms . . .." *Id.* There was no dispute that this met "the definition of 'forced labor' supplied by the International Labour Organization [("ILO")] Forced Labor Convention of 1930: 'all work or service which is exacted from any person under the menace of any penalty and for which the said person has not offered himself voluntarily.'"[4] *Id.* at 1074 (quoting ILO Convention No. 29 Concerning Forced or Compulsory Labor, art. 2, 39 U.N.T.S. 55, *entered into force*, May 1, 1932).

Other courts, however, have dismissed ATS claims for forced labor based on allegations of "more ambiguous situations involving poor working conditions and meager or exploitive wages." *Roe v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1010 (S.D. Ind. 2007). In *Bridgestone*, the court relied on an ILO report interpreting the same definition of forced labor, which has a "lack of consent prong," *id.* at 1013, and a "'menace of any penalty' prong." *Id.* at 1014. The ILO report listed numerous "indicators" for determining whether the consent prong was met, specifically, birth as a slave, abduction, sale or ownership of a person, physical confinement, orders to compel work enforced by credible threats, induced

---

[4] Although Plaintiffs do not identify this or any other international norm defining prohibited forced labor, the federal courts that have considered ATS forced labor claims have relied on it, and Defendants assume this is the standard Plaintiffs would seek to apply.

indebtedness by deception or usury, false promises about the nature or terms of the work, withholding wages, and retention of identity documents or personal possessions. *Id.* at 1013.

The court in *Bridgestone* held that the alleged conduct did not match with these indicators. There was no allegation of induced indebtedness, even though the workers alleged they had nothing left to spend after paying for all their necessities at company-owned stores and schools. *Id.* at 1014. There was no alleged confinement, even though the workers alleged they were isolated on the plantation where they worked. *Id.* There was no alleged compulsion to work, even though the workers had a credible fear of losing their job—this fear arose from the lack of viable alternatives, not compulsion. *Id.* The court concluded that "[e]ven though there are some forms of forced labor (Nazi Germany, for example) that clearly violate international law, . . . the circumstances alleged . . . do not violate specific, universal norms of international law." *Id.* at 1015. Furthermore, the court noted, the United States had not even ratified the ILO Convention NO. 29, in which forced labor was defined. *Id.*

Plaintiffs' allegations suffer from many of the same deficiencies as the allegations in *Bridgestone*. Plaintiffs consented to the terms of their employment, including any fees. First Am. Compl. [Dkt. No. 29] at ¶ 23. There is no allegation that they worked under protest as a result of compulsion, that the nature of the

labor was different than what was promised, or that their wages were withheld for work performed. To the contrary, Plaintiffs complain that their labor ended when they wanted it to continue. *Id.* at ¶ 26. This is completely counter to the requirement under international law that forced labor be without consent. *See Bridgestone*, 492 F. Supp. 2d at 1016 ("The remedy for truly forced labor should be termination of the employment and the freedom to go elsewhere."). Plaintiffs' ATS claim should be dismissed for the failure to allege any violation of the international norms regarding forced labor.

**B.    Plaintiffs' Constitutional Claim Fails Because The Thirteenth Amendment Does Not Create a Private Right of Action and Because the Facts Alleged Do Not State a Claim for Involuntary Servitude.**

Plaintiffs claim that Interserco and the other Defendants violated the prohibition of involuntary servitude set forth in the Thirteenth Amendment is similarly doomed to fail. First and foremost, "federal district courts have consistently held that the Thirteenth Amendment itself does not provide a private right of action for damages." *Bridgestone*, 492 F. Supp. 2d at 997 (collecting cases); *see Doe v. Keane*, 658 F. Supp. 216, 220 (W.D. Mich. 1987) ("[I]t is well established that the Thirteenth Amendment does not allow for independent, private causes of action."); *Sanders v. A.J. Canfield Co.*, 635 F. Supp. 85, 87 (N.D. Ill. 1986) ("There is no direct private cause of action under the Thirteenth Amendment."); *Vietnamese Fishermen's Ass'n. v. Knights of Ku Klux Klan*, 518 F.

Supp. 993, 1012 (S.D. Tex. 1981) ("This Court is unaware of any authority which would support the proposition that a direct cause of action exists under the Thirteenth Amendment of the Constitution."). Plaintiffs' Thirteenth Amendment claim is therefore without merit.

Second, the acts alleged in the complaint do not fit within the prohibited act "involuntary servitude" under the Thirteenth Amendment. Involuntary servitude, under the Thirteenth Amendment, is coextensive with the term as it is used in section 1584. *See United States v. Kozminski*, 487 U.S. 931, 945 (1988) ("[T]he conclusion that Congress intended the phrase ["involuntary servitude"] to have the same meaning in both places [section 1584 and the Thirteenth Amendment is] logical, if not inevitable."). Section 1584 only applies "to cases involving the compulsion of services by the use or threatened use of physical or legal coercion." *Kozminski*, 487 U.S. at 948. "[A] showing of compulsion is a prerequisite to a claim of involuntary servitude . . . [and] [t]here is no involuntary service if the alleged servant has a choice, even if it is a painful one." *Watson v. Graves*, 909 F.2d 1549, 1552 (5th Cir. 1990); *see Lowe v. Wellcare Health Plans, Inc.*, 2009 U.S. Dist. LEXIS 87378 at *4 (N.D. Tex. Aug. 21, 2009) (dismissing Plaintiff's claim for failure "to show she was forced or compelled to work for Defendants").

Plaintiffs' complaint is devoid of any allegation that Interserco compelled Plaintiffs' service to which Plaintiffs had no choice but to perform. Plaintiffs allege

19

that they received inadequate housing, were isolated as a consequence of the location of their work and housing, and were discouraged not to talk to "outsiders," by threats from unidentified individuals. First Am. Compl. [Dkt. No. 29] at ¶ 25. There is no indication that any of these were intended to compel Plaintiffs' service, which is a requirement of any claim for involuntary servitude. Instead, when Plaintiffs were terminated, they sought to continue working, *id.* at ¶ 26, demonstrating that they voluntarily chose to work despite the alleged conditions.

### C.   Plaintiffs Fail to Allege Any Labor Conditions That Violate the TVPRA.

Plaintiffs assert a claim under section 1590, which requires that they allege Defendants "knowingly recruit[ed], harbor[ed], transport[ed], provide[d], or obtain[ed] by any means, any person for ***labor or services in violation of this chapter***." 18 U.S.C. § 1590. Plaintiffs do not allege facts that support that the conditions of their labor violated Chapter 77 of Title XVIII of the United States Code.[5] Plaintiffs therefore fail to state a claim under section 1590, and this claim must be dismissed.

---

[5] As relevant here, the conditions of labor or services that violate Chapter 77 of Title XVIII of the United States Code are involuntary servitude (which includes slavery), peonage, and forced labor. *See* 18 U.S.C. §§ 1581 (peonage), 1584 (involuntary servitude), 1589 (forced labor). Of the three general categories of prohibited labor under Chapter 77, forced labor is the broadest and is therefore the principal focus of this analysis.

"Forced labor" is labor or services obtained or provided:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589. The threatened serious harm need not be physical harm, but "the threat, considered from the vantage point of a reasonable person in the place of the victim, must be 'sufficiently serious' to compel that person to remain." *U.S. v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011) (citing 18 U.S.C. § 1589(c)(2)). Moreover, the threat must have been "intended to cause the victim to believe that she would suffer serious harm . . . if she did not continue to work." *Id.* The facts alleged do not even meet the broad definition of "forced labor," let alone the more restrictive definitions of involuntary servitude or peonage.

Plaintiffs were aware of the terms of the contracts with their Employers and accepted them without coercion, despite the alleged costs, because the contracts were lucrative. First Am. Compl. [Dkt. No. 29] at ¶ 23. Plaintiffs received the promised housing, though the condition was allegedly unacceptable. *Id.* at ¶ 24. Plaintiffs also received the promised transportation to and from their work site, as

well as weekly transportation to a grocery store. *Id.* at ¶ 25. Plaintiffs did not receive free transportation anywhere else, nor were they given access to the Internet and other media or English language classes. *Id.*

None of these conditions, even taking them all together, rise to the level of forced labor. First, there can be no serious contention that the lack of free transportation, English educational opportunities, or Internet access were by design or were intended by anyone to coerce Plaintiffs to continue working, nor could the failure to provide them reasonably force anyone to continue working. *See generally id.* at ¶¶ 24-25. Plaintiffs freely agreed to the terms before leaving Vietnam, and these benefits were not part of the terms. *Id.* at ¶ 23. An employer's failure to provide ***promised*** compensation or benefits is not necessarily forced labor, *see, e.g., Desilva v. N. Shore-Long Island Jewish Health Care Sys., Inc.*, No 10-CV-1341 (JFB) (ETB), 2012 U.S. Dist. LEXIS 30597, at *25 (E.D.N.Y. March 7, 2012) (holding that forced labor claims based on withholding pay for overtime work were properly claims under the Fair Labor Standards Act), so the failure to provide ***unpromised*** benefits can hardly qualify.

Second, there are no allegations that wages were withheld for work performed, which supports the inference that the Plaintiffs' work was voluntary labor, not a result of coercion. In the only case the undersigned counsel has found where forced labor claims were held viable despite promised wages being paid in

full, the plaintiffs were subject to repeated demands for previously undisclosed fees and threatened with deportation if they refused to pay. In *Nunag-Tanedo v. East Baton Rouge Parish School Board*, the plaintiffs were immigrant teachers from the Phillipines who, after paying a non-refundable recruitment fee, were required to pay an additional, larger fee that had been not previously disclosed. 790 F. Supp. 2d 1134, 1144 (C.D. Cal.). This second fee was demanded before the plaintiffs left their home country, but after they gave the defendants their passports and visas. *Id.* The defendants told the plaintiffs they would lose their visas, their jobs, and the fees they already paid if the plaintiffs did not pay the previously undisclosed fee. *Id.* Moreover, even after the plaintiffs began to work in the United States, the defendants continued to threaten plaintiffs with deportation and "made additional threats to sue, allow visas to expire, and terminate teachers if the teachers did not pay additional fees demanded by Defendants." *Id.* at 1139.

In contrast, Plaintiffs in this case acknowledge that all the fees they paid had been disclosed up front and that they voluntarily agreed to pay them. First Am. Compl. [Dkt. No. 29] at ¶ 23. Plaintiffs were apparently paid what they were promised, since they allege no wages were withheld. In fact, the complaint as a whole suggests they made a conscious decision to accept the terms of their employment, and, but for their early termination by their Employers, would have

chosen to continue working "to recoup their down payments and expenses." *Id.* at ¶ 26.

Finally, the only other allegation on which Plaintiffs' appear to base their TVPRA claim is a vague, isolated allegation that Plaintiffs were "repeatedly threatened" by some unidentified individual not to talk to "outsiders." *Id.* at ¶ 25. These alleged threats do not support a TVPRA claim, however, because the facts do not support an inference they were intended to induce, or reasonably could have induced, Plaintiffs to continue to work.[6] To the contrary, Plaintiffs indicate that they wanted to continue working to earn their promised wages. *See id.* at ¶ 23 (Plaintiffs accepted the jobs "[b]ecause [they] were high paying and long term"); *id.* at ¶ 26 (Plaintiffs responded to termination by "ask[ing] questions about the guaranteed work term of thirty months"). In this context, it is impossible to conclude that threats made to discourage talking to "outsiders" were intended to coerce continued labor nor that they actually did coerce continued labor, both of which are essential elements of forced labor under section 1589. *Dann*, 652 F.3d at 1170.

Also, because forced labor subsumes the narrower categories of involuntary servitude and peonage prohibited by sections 1584 and 1581, respectively, these

---

[6] Assuming these allegations are true, Defendants are not condoning such threats, but an abusive employer/employee relationship is not necessarily forced labor.

provisions do not provide a basis for Plaintiffs' section 1590 claim. As already discussed above, the facts of this case do not amount to involuntary servitude under section 1584, thus Plaintiffs' section 1590 claim cannot be based on involuntary servitude. *See* Section II.B, *supra*. Nor can it be based on peonage, which is "a status or condition of compulsory service or involuntary servitude based upon a real or alleged indebtedness." *Pierce v. United States*, 146 F.2d 84, 86 (5th Cir. 1944); *see also Pollock v. Williams,* 322 U.S. 4, 9 (1944) (holding the "basal fact [of peonage] is indebtedness").

There are no allegations that Plaintiffs' purported involuntary servitude was in effect to satisfy a debt. Plaintiffs allege they willingly paid a fee and a portion of their wages for visas, travel, lodging, food, and transportation. First Am. Compl. [Dkt. No. 29] at ¶ 23. Plaintiffs admit they received airfare, lodging, food, and transportation. *Id.* at ¶ 23–25. Plaintiffs do not allege they were indebted to Interserco or the other Defendants, but instead allege that they "paid the required monies, up front, to principals of both Defendants." *Id.* at ¶ 23. Therefore, Plaintiffs section 1590 claim cannot be based on an alleged violation of section 1581.

## III. Plaintiffs Fail to Allege Any Facts Showing a Culpable Mental State on Which to Base Their TVPRA and Common Law Fraud Claims.

All of Plaintiffs' claims should be dismissed because the underlying acts by the Employers, as alleged, do not rise to the level of forced labor or involuntary

servitude and, even if they did, there is no basis for attributing those acts to Interserco or the other Defendants. Plaintiffs' fraud and TVPRA claims fail for yet another reason, as well. Both of these claims require that Defendants (including Interserco) knew, in advance, of future alleged acts by the Employers. Under the Rule 8 standard for pleading, Plaintiffs' must allege facts to support any legal conclusion, include knowledge or other states of mind. *See Vasudevan Software, Inc. v. Tibco Software Inc.*, No. C11-06638 RS, 2012 U.S. Dist. LEXIS 69952, at *14 (N.D. Cal. May 18, 2012) ("[Plaintiff's] failure to plead any facts directed to showing actual knowledge is hardly a technicality."); *see also Iqbal*, 129 S. Ct. 1937 (holding plaintiff's pleading failed to "meet the standard necessary to comply with Rule 8" where it did not allege facts to support discriminatory intent).

**A.    The TVPRA Claim Fails Because Interserco Could Not Have Foreseen Plaintiffs' Working Conditions, on the Facts Alleged.**

Not only do Plaintiffs fail to allege conditions that amount to "forced labor," as explained above, they fail to allege any basis from which to conclude that Defendants, collectively, knowingly recruited Plaintiffs for labor under those conditions. As Plaintiffs acknowledge, their TVPRA claim requires that Interserco and the other Defendants "***knowingly*** recruited, transported, [or] harbored Plaintiffs for labor and services in violation of 18 U.S.C. § 1590." First Am. Compl. [Dkt. No. 29] at ¶ 31 (emphasis added); *see* 18 U.S.C. § 1590. Some degree of facts are necessary to support the inference of knowledge for Plaintiffs'

26

TVPRA claim. *See also Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 681, 684 (S.D. Tex. 2009) (considering extensive allegations regarding the basis for defendant's knowledge of forced labor conditions to be relevant when denying motion to dismiss). In *Adhikari*, the plaintiffs alleged that defendants knew of prior complaints by workers and of earlier, similar incidents to those complained of and involving the same labor supply company. *Id.* Plaintiffs' need to allege similarly substantial facts supporting the inference that Interserco knew when they allegedly recruited Plaintiffs what would later transpire in the United States.

Plaintiffs' only relevant factual allegation shows that Interserco knew the terms of the prospective employment because Interserco conveyed these terms to Plaintiffs. First Am. Compl. [Dkt. No. 29] at ¶ 23. Plaintiffs do not, and cannot, make knowledge of these terms the basis of a trafficking claim because Plaintiffs voluntarily agreed to the terms with which they were provided. *Id.* Conspicuously absent, however, are any allegations that Interserco knew more.

Instead, Plaintiffs allege no facts from which to conclude Interserco knew the condition of the apartments where Plaintiffs would live, what language their driver would speak, the lack of access to television and other media, that an unidentified person would later threaten Plaintiffs not to speak with "outsiders," nor any of the other difficulties Plaintiffs' allegedly endured. In fact, given the "robust Greater Houston Vietnamese-American community," *id.* at ¶ 25, it is

equally possible Interserco would have thought Houston would be one of the least isolating places for Plaintiffs to work in the United States. Given the total lack of allegations supporting any contrary inference, Plaintiffs have failed to support the assertion that Interserco knowingly recruited them for the working conditions they allegedly faced. For this reason, as well as the failure to adequately allege forced labor conditions, this Court should dismiss Plaintiffs claim under section 1590.

### B.     Plaintiffs' Allegations Fall Far Short of the Heightened Standard for Pleading Fraud Claims.

Plaintiffs must allege their newly asserted claim for "Fraud and Fraudulent Inducement" with particularity. Fed. R. Civ. P. 9(b). But key required facts are notably absent, including the identity of the speaker who made the statement and the alleged reason why it was false when made. *E.g., Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Plaintiffs fail to allege any facts from which to conclude that Interserco knew the Employers would terminate the Plaintiffs before thirty months had passed. In fact, because Plaintiffs completely fail to identify any individual person charged with making the alleged misrepresentations, it is impossible even to determine *who* would be required to know.

To meet the requirements of Rule 9(b) and "plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (citing *Greenstone v.*

28

*Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992)). "[A] complaint's general averment of the defendant's 'knowledge' of material falsity" is inadequate, "unless the complaint ***also*** sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Greenstone*, 975 F.2d at 25 (emphasis in original). Moreover, "the required state of mind must actually exist in the individual making (or being a cause of the making of) the misrepresentation, and may not simply be imputed to that individual on general principles of agency." *Southland Sec. Corp.*, 365 F.3d at 366.

In *Greenstone,* the court considered whether factual allegations that the defendant company failed to disclose a potential liability from a lawsuit where a third-party filed that lawsuit a few months after the alleged misrepresentation. *Id.* at 26. While the complaint alleged, "in conclusory fashion," that the defendant knew that part of its business model was prohibited by contracts with a third-party IBM subsidiary, this was not enough. *Id.* at 25. The court then considered factual allegations about the timing of the lawsuit, the speed with which it settled, insider stock sales occurring on an indeterminate date, and the Defendant's intent to carry out the conduct eventually giving rise to the lawsuit. *Id.* at 26. None of these facts supported the inference that the defendant knew, when it made statements about its business, that the lawsuit was "probable." *Id.* at 26-27. Plaintiffs do not make any effort to allege facts supporting the inference that any individual both knew, in

29

advance, that the Employers would later breach their contract with Plaintiffs and knowingly made the alleged misrepresentation. Because of this fatal defect in the Complaint, Plaintiffs' fraud claim should be dismissed.

## CONCLUSION

Despite having resolved their claims against their former employers, Coast to Coast Resources, Inc. and ILP Agency, Plaintiffs seek an unjustified recovery for the acts of these U.S. companies from Interserco (and the other Defendants). Plaintiffs provide no factual support for this attempt, instead providing a list of unsupported legal conclusions and labels, including claims and theories without any clear application to the facts and a claim that is not even recognized as valid. Furthermore, the treatment Plaintiffs allegedly received from their former U.S. employers does not come close to meeting the legal definitions of forced labor and involuntary servitude under either U.S. or international law. And finally, Plaintiffs' unsupported assertion that Interserco's involvement in the situation was "knowing" is not sufficient to justify holding them accountable for the acts of unrelated third parties. Interserco therefore respectfully requests that this Court dismiss the First Amended Complaint as to it for failure to state a claim for which relief can be granted.

DATED: November 19, 2012

Respectfully submitted,

By: /s/ *Charles S. Kelley*
Charles S. Kelley
*Attorney-in-Charge*
Texas Bar No. 11199580
Southern District I.D. No. 15344
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, Texas 77002-2730
(713) 238-2634
(713) 224-4634 FAX
Email: ckelley@mayerbrown.com

**OF COUNSEL:**

William H. Knull, III
Texas Bar No. 11636900
Southern District I.D. No. 7701
Kyle E. Friesen
Texas Bar No. 24061954
Southern District I.D. No. 1010300
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Phone: 713-238-3000
Fax: 713-238-4888
Email: wknull@mayerbrown.com
Email: kfriesen@mayerbrown.com

**ATTORNEYS FOR**
**DEFENDANTS INTERSERCO**

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document is being automatically served on all known Filing Users in this matter through the Court's Notice of Electronic Filing Service, on this the 19th day of November, 2012, and on all parties or counsel who is not a Filing User by United States first class mail, postage prepaid.

Anthony G Buzbee
The Buzbee Law Firm
JP Morgan Chase Tower
600 Travis, Ste 7300
Houston, TX 77002
713-223-5393
Fax: 713-223-5909
Email: tbuzbee@txattorneys.com

Minh Tam Tran
The Tammy Tran Law Firm
2915 Fannin
Houston, TX 77002
713-655-0737
Fax: 713-655-0823
Email: ttran@tt-lawfirm.com

/s/ *Kyle E. Friesen*
Kyle E. Friesen