## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **THANG HONG LUU, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 3:11-cv-00182** |
| | § | |
| **INTERNATIONAL INVESTMENT** | § | |
| **TRADE AND SERVICE GROUP** | § | |
| **A/K/A INTERSERCO, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT INTERSERCO'S MOTION TO DISMISS

Respectfully submitted,

**THE BUZBEE LAW FIRM**

/s/ Anthony Buzbee
ANTHONY BUZBEE
State Bar No.: 24001820
S.D. Admissions No. 22679
JPMorgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone:  (713) 223-5393
Fax: (713) 223-5909
tbuzbee@txattorneys.com

**THE TAMMY TRAN LAW FIRM**

TAMMY TRAN
State Bar No. 20186400
PETE MAI
State Bar No. 24029702

JOHN NA
State Bar No. 24074786
RYAN NGUYEN
State Bar No. 24083570
2915 Fannin
Houston, Texas 77002
Phone: 713-655-0737
Fax: 713-655-0823

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ............................................................................................1

STANDARD OF REVIEW ..............................................................................6

ARGUMENT ...................................................................................................7

I.      Plaintiffs' Complaint Sufficiently Alleged a Conspiracy Claim ..................7

II.     Plaintiffs' Complaint Sufficiently Alleged Legal Doctrines that
        would Impute Interserco with Vicariously Liability .....................................8

III.    Plaintiffs' Complaint Sufficiently Alleged a Claim under the Alien
        Tort Claims Act .............................................................................................9

IV.     Plaintiffs' Complaint Sufficiently Alleged a Claim under the
        Trafficking Victims Protection Reauthorization Act (the "TVPRA").........12

V.      Plaintiffs' Complaint Sufficiently Alleged a Claim for Fraud....................15

VI.     Leave to Amend ...........................................................................................16

PRAYER ........................................................................................................16

CERTIFICATE OF SERVICE .......................................................................18

# TABLE OF AUTHORITIES

*Amacker v. Renaissance Asset Management LLC*,
657 F3d 252 (5th Cir. 2011) ..................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................6, 7, 8

*Doe v. Nestle, S.A.*,
748 F.Supp.2d 1057 (C.D.Cal. 2010) ......................................................9

*Doe v.Unocal Corp.*,
963 F.Supp. 880 (C.D.Cal. 1997) .......................................................9, 10

*Erickson v. Pardus*,
551 U.S. 89 (2007)..................................................................7

*Grayson v. Mayview State Hosp.*,
293 F.3d 103 (3d. Cir. 2002)..................................................................16

*Harrington v. State Farm Fire & Cas. Co.*,
563 F.3d 141 (5th Cir. 2009) ..................................................................7

*In re World War II Era Japanese Forced Labor Litigation*,
164 F.Supp.2d 1160 (N.D.Cal. 2001) ......................................................9

*Licea v. Curacao Drydock Co., Inc.*,
584 F.Supp.2d 1355 (S.D.Fla. 2008) ......................................................9

*Moore v. Kayport Package Exp., Inc.*,
885 F.2d 531 (9th Cir. 1989) ..................................................................15

*Pierce v. United States*,
146 F.2d 84 (5th Cir. 1944) ..................................................................14

*Pollock v. Williams*,
322 U.S. 4 (1944)..................................................................14

*Roe v. Bridgestone Corp.*,
492 F. Supp. 2d 988 (S.D. Ind. 2007)..................................................10, 11

*Skinner v. Switzer*,
131 S.Ct. 1289 (U.S. Mar. 07, 2011) ........................................................6

*Sosa v. Alvarez-Machain*,
542 U.S. 592 (2004) ...................................................................................9

*United States v. Calimlim*,
538 F.3d 706 (7th Cir. 2008) ....................................................................14

*Velez v. Sanchez*,
754 F. Supp.2d 488 (E.D.N.Y. 2010) .......................................................9

STATUTES

18 U.S.C. § 1589 ..........................................................................12, 13, 14

18 U.S.C. § 1595 .......................................................................................12

28 U.S.C. § 1350 .........................................................................................9

OTHER AUTHORITIES

U.S. Dept. of State, *Trafficking in Persons Report* (2012),
available at http://www.state.gov/j/tip/rls/tiprpt/2012/192368.htm .........1

U.S. Dept. of State, *Trafficking in Persons Report* (2011),
available at http://www.state.gov/j/tip/rls/tiprpt/2011/164233.htm .........1

Plaintiffs, through their undersigned attorneys, file this Response in Opposition to the Motion to Dismiss filed by Defendant International Investment Trade and Service Group (this Defendant and their co-conspirators hereafter are referred to collectively as "Interserco"). (Doc. No. 30).   Plaintiffs submit that Interserco's Motion should be denied based on the grounds and reasons set forth below.

## **INTRODUCTION**

This is an important human trafficking case addressing the predation of laborers from Vietnam.  At the outset, Plaintiffs respectfully ask this Honorable Court to take judicial notice that the U.S. Department of Justice and Immigration and Customs Enforcement ("ICE") have investigated this case, and the laborers just have been granted T Visas.[1]  Vietnam has been placed in the Tier 2 Watch list in 2011 and 2012 for not fully complying with the Trafficking Victims Protection Act's minimum standards for the elimination of trafficking.[2]  In addressing this grave problem, the U.S. Department of State's annual *Trafficking in Persons Report* provides:

---

[1] A T visa is a type of visa allowing certain victims of human trafficking and immediate family members to remain and work temporarily in the United States if they agree to assist law enforcement in testifying against the perpetrators.

[2] Plaintiffs also respectfully request the Court to take judicial notice of the U.S. Department of State: *Trafficking in Persons Report of 2012*.  U.S. Dept. of State, *Trafficking in Persons Report* (2012), *available at* http://www.state.gov/j/tip/rls/tiprpt/2012/192368.htm and U.S. Department of State: *Trafficking in Persons Report of 2011*.  U.S. Dept. of State, *Trafficking in Persons Report* (2011), *available at* http://www.state.gov/j/tip/rls/tiprpt/2011/164233.htm.

1

Vietnam's labor export companies, most of which are affiliated with state-owned enterprises, as well as unlicensed middlemen brokers, have been known to charge workers in excess of the fees allowed by law for the opportunity to work abroad. This forces Vietnamese workers to incur some of the highest debts among Asian expatriate workers, making them highly vulnerable to **debt bondage** and **forced labor**. A study on migration trends conducted in 2010 of 1,265 Vietnamese migrants from three northern districts who had gone abroad for work found that nearly all faced high recruitment fees that put them in a state of debt bondage for years.

\*\*\*\*\*

Some of Vietnam's recruitment companies reportedly did not allow workers to read their contracts until the day before they were scheduled to depart the country, after the workers had already paid significant recruitment fees, often incurring debt. Some workers reported signing contracts in languages they could not read. There also have been documented cases of recruitment companies being unresponsive to workers' requests for assistance in situations of exploitation.

\*\*\*\*\*

In ... labor trafficking, debt bondage, confiscation of identity and travel documents, and threats of deportation are commonly utilized to intimidate victims.

\*\*\*\*\*

NGOs report that traffickers' increasing use of the Internet to lure victims has led to a rising number of middle-class and urban-dwelling Vietnamese to fall prey to human trafficking. There are reports that individuals who failed to meet work quotas were punished through beatings and other physical abuse.

\*\*\*\*\*

**[An] [i]ndicator[] of forced labor ... [is] confiscation of travel documents by employers or labor brokers....**

\*\*\*\*\*

Contract disputes between Vietnamese workers and their Vietnam-

2

based labor recruitment companies or companies overseas – including for fraudulent recruitment and conditions that are indicative of forced labor – are left largely to the labor export recruiting company to resolve. **Although workers have the legal right to take cases to court, in practice few have the resources to do so, and there is no known record of a Vietnamese labor trafficking victim successfully achieving compensation in court; thus, in practice, workers are left without reasonable legal recourse in such cases.**

\*\*\*\*\*

The Vietnamese government ... did not make efforts to adequately identify victims among vulnerable populations or protect victims of labor trafficking or internal trafficking. Victim protection plans outlined in the anti-trafficking law have not yet been implemented. The government did not develop or employ systematic nationwide procedures to proactively and effectively identify victims of trafficking among vulnerable populations....

\*\*\*\*\*

**The government continued to act as a perpetrator of forced labor....**

\*\*\*\*\*

The government did not provide adequate legal protection from **forced labor** or assistance to victims in Vietnam or abroad. During the year, more than 88,000 Vietnamese workers traveled abroad to work through official contracts, and the total number of Vietnamese migrant workers in 40 countries and territories is estimated to be approximately 500,000.

\*\*\*\*\*

Government regulations do not prohibit private employers from withholding the passports of workers in destination countries, and Vietnamese companies were known to withhold workers' travel documents, a known contributor to trafficking.[3]

---

[3] *Id*. (emphasis added).

3

Defendant Interserco, Defendant General Automotive Industry Corporation of Vietnam ("Vinamotors"), and Defendant Tourist, Trade and Labor Export Joint Stock Company ("TTLC") are part of an international human trafficking conspiracy.  As illustrated in the 2012 Report of the U.S. Department of State, Interserco's illegal purpose was to lure Vietnamese laborers like Plaintiffs into a scheme, whereby, for a large fee, the laborers would be brought to the United States from Vietnam and given the opportunity to work for Interserco's co-conspirators, Coast to Coast Resources, Inc. and ILP Agency, LLC (collectively "Coast to Coast"), for a designated period—30 months—before returning to their homeland.    First Am. Compl. [Dkt. No. 29] at ¶¶ 2, 21.  Each Plaintiff was required to pay Interserco (or Vinamotors and TTLC) an initial fee ranging from $7,000 to $15,000, an enormous sum by Vietnam standards (where the current average yearly income is approximately $1,000).  *Id.* at ¶ 23.  To raise the sums necessary to pay Interserco for the "opportunity" to work in the U.S. for Coast to Coast, Plaintiffs were forced to obtain loans at usurious interest rates.  *Id.* To obtain these loans, Plaintiffs were required to turn over the deeds to their home to Interserco.  *Id.*  Plaintiffs were effectively ensnared in Interserco's trafficking scheme at that point because only by working for Coast to Coast for the duration of 30 months could they repay their usurious debt and avoid losing their home. Moreover, failure to repay a debt under Vietnam law could result in incarceration.

4

In addition to the fees paid to Interserco, each Plaintiff was required to pay a portion of his wages earned in the U.S. to Coast to Coast.[4]   *Id.*   In return, Interserco, through their principals and employees, promised to provide each Plaintiff with (a) travel to the U.S., (b) work visas covering the full 30-month period, (c) lodging in the U.S., and (d) a high paying job (realizing approximately $120,000) with Coast to Coast in the U.S.   *Id.*

Plaintiffs were induced into the above scheme based on misrepresentations and false promises made by Interserco, through their principals and employees, regarding high paying jobs in the U.S.   *Id.* at ¶ 23.   Based on Interserco's misrepresentations regarding the amount of money they could make in the U.S., Plaintiffs paid the initial required fees to Interserco.   *Id.*   Plaintiffs raised money to pay for these fees by taking on a usurious loan secured by a lien on their home. After being transported to the U.S., Plaintiffs' passports were confiscated and kept by Interserco's co-conspirators.   While in America, Plaintiffs were segregated into groups of four and were forced to live in run-down and dilapidated two bedroom apartments.   *Id.* at ¶ 25.   Plaintiffs' living and working conditions were deplorable. *Id.* at ¶ 21.   Plaintiffs were kept isolated or secluded.   Eight months into the promised 30-month employment term, Plaintiffs' employment was abruptly terminated and Plaintiffs were told to leave the U.S. and return to Vietnam.   *Id.* at ¶

---

[4] Plaintiffs anticipate that discovery will reveal that Coast to Coast share a portion of the laborers' wages with Interserco.

26.  Interserco terminated Plaintiffs' employment so that a new set of unsuspecting laborers could be lured into the scheme and Interserco could receive a new set of fees.  *Id.*  Interserco's conduct left Plaintiffs in financial distress and facing deportation.  *Id.* at ¶¶ 21, 27.  The allegations in Plaintiffs' complaint, summarized above, set forth a claim plausible on its face, which is all that is required under the federal pleading rules.  Accordingly, Interserco's Motion to Dismiss should be denied.  Alternatively, Plaintiffs request an opportunity to replead and correct any allegation the Court finds insufficient.[5]

## STANDARDS OF REVIEW

The applicable standard on a motion to dismiss is that the complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Amacker v. Renaissance Asset Management LLC*, 657 F.3d 252, 254 (5th Cir. 2011).  In resolving a motion to dismiss, the question is "not whether [the responding party] will ultimately prevail" but whether his complaint was sufficient to cross this threshold. *Skinner v. Switzer*, 131 S.Ct. 1289, 1296, 79 USLW 4157

---

[5] Based on discussions with Interserco's counsel, Plaintiffs amended their Original Complaint to include an additional defendant.  The amended complaint did not include additional factual details.  Interserco subsequently moved to dismiss Plaintiffs' First Amended Complaint.

(U.S. Mar 07, 2011). In making this determination, the district court is directed to construe the complaint liberally in favor of the plaintiff, and to take all facts pleaded in the complaint as true. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). Moreover, due to Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the claim . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, the district court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of her claims, not whether the plaintiff will eventually prevail. *Twombly*, 550 U.S. at 563 n.8.

## ARGUMENT

## I.  **Plaintiffs' Complaint Sufficiently Alleged a Conspiracy Claim.**

Plaintiffs' allegations sufficiently alleged a scheme between Interserco and Coast to Coast directed at luring Vietnamese laborers into an arrangement where they would be transported to the U.S. to work for Coast to Coast. Interserco represented that Interserco would be working with Coast to Coast, who would assist in coordinating the logistics of this venture in the U.S. First Am. Compl. [Dkt. No. 29] at ¶ 38. Interserco obtained fees ranging between $7,000 to $15,000 from each Plaintiff. Coast to Coast obtained labor and a portion of each Plaintiff's

wages.   In furtherance of this scheme, Interserco made misrepresentations to Plaintiffs regarding the length and term of their employment that would be available with Coast to Coast and the amount of money Plaintiffs would realize. *Id.*  Interserco further made misrepresentations that Plaintiffs' work visas would be guaranteed for the full duration of the 30-month employment term.  *Id.*  These allegations are sufficient to allege a conspiracy claim plausible on its face.  Unlike the actors in *Twombly*,[6] Interserco and Coast to Coast were required to act jointly in order to implement their scheme.  The scheme of luring and transporting labor from Vietnam to the U.S. could not be accomplished without the agreement and participation of actors in Vietnam (Interserco) and actors in the United States (Coast to Coast).

## II.   Plaintiffs' Complaint Sufficiently Alleged Legal Doctrines that would Impute Interserco with Vicariously Liability.

Plaintiffs sufficiently alleged legal doctrines which would impute vicariously liability upon Interserco.[7]  The allegations specifically identified actors who are employees of Interserco.  First Am. Compl. [Dkt. No. 29] at ¶¶ 23, 41. Plaintiffs' complaint further alleged that Interserco benefitted from their scheme

---

[6] Interserco's reliance on *Twombly* is further misplaced.  *Twombly* involved the requirements for alleging an antitrust conspiracy claim under section 1 of the Sherman Act.  *Twombly*, 550 U.S. at 543-44.  This case does not involve an antitrust conspiracy.

[7] Plaintiffs' complaint does not allege a claim of negligent hiring.  Therefore, Interserco's arguments regarding this non-asserted claim are irrelevant.

with Coast to Coast by obtaining the required fees and liens from Plaintiffs in addition to the portion of the billions in revenue from the export of labor from Vietnam.

## III. Plaintiffs' Complaint Sufficiently Alleged a Claim under the Alien Tort Claims Act.

Plaintiffs' complaint sufficiently alleged a claim under the Aliens Tort Claims Act (the "ATS"). The ATS is a jurisdictional statute that permits courts to hear claims arising from violations of international norms. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 736 (2004). The requisite harm necessary to bring a claim under the ATS is a "violation of the law of nations," which is any claim based on the present-day law of nations resting on a norm of international character accepted by the civilized world. 28 U.S.C.A. § 1350. Human trafficking and forced labor violates international law and specific norms accepted by the civilized world. *See, e.g., Velez v. Sanchez*, 754 F. Supp.2d 488, 496 (E.D.N.Y. 2010); *Doe v. Nestle, S.A.*, 748 F.Supp.2d 1057, 1057 (C.D.Cal. 2010). Courts routinely recognize that human trafficking, forced labor, and involuntary servitude state a claim cognizable under ATS. *See*, *e.g.*, *Licea v. Curacao Drydock Co., Inc.*, 584 F.Supp.2d 1355 (S.D.Fla.2008) (finding that alleged forced labor and international human trafficking of plaintiff by operator of a drydock facility constituted violations of international law); *In re World War II Era Japanese Forced Labor Litigation*, 164 F.Supp.2d 1160, 1179 (N.D.Cal.2001) (holding that forced labor violates the law

of nations); *Doe v. Unocal Corp.*, 963 F.Supp. 880, 892 (C.D.Cal. 1997) (concluding allegations that defendants participated and benefited from forced labor sufficient to establish jurisdiction under the ATS).

The case cited by Interserco, *Roe v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1013-14 (S.D. Ind. 2007), recognized a two prong test for establishing "forced labor" under the ATS: (1) lack of consent and (2) menace of any penalty. *Id.* at 1013-14. In determining whether these exists a "lack of consent," the court is directed to consider a number of factors including the existence of: (a) any deception or false promises about the type and terms of work; (b) any induced indebtedness by deception or usury; and (c) any psychological compulsion, *i.e.*, an order to work, backed up by a credible threat of a penalty for non-compliance. *Id.* at 1013. These factors are present in this case. Plaintiffs were deceived with false promises about the types and terms of work. Also, in order to be selected for this scheme, Plaintiffs were required to incur a debt with usurious interest rate and were forced to pledge their homes. First Am. Compl. [Dkt. No. 29] at ¶¶ 21, 23, 26, 27. Interserco and/or the other Defendants confiscated the deeds to Plaintiffs' home and travel documents. Additionally, Interserco compelled Plaintiffs to continue to work with threats of imprisonment (of Plaintiffs and their family members) in Vietnam if they left their jobs and went home.[8] *Id.* at ¶¶ 21-29, 35,

---

[8] In Vietnam, failure to repay a debt is punishable by incarceration.

38, 41.  Plaintiffs' freewill was overcome by the fear that unless they continued working for Coast to Coast, they would be unable to pay their usurious debt and prevent the forfeiture of their home. *Id*. at ¶ 26.

In considering whether labor is under the "menace of penalty," the court is to consider the existence or threat of: (1) physical violence against worker or family or close associates; (2) imprisonment or other physical confinement; (3) financial penalties; (4) denunciation to authorities and deportation; (5) dismissal from current employment; and (6) exclusion from future employment. *Bridgestone* at 1014.  These factors are present in this case.  Plaintiffs faced threats of imprisonment, financial penalties, denunciation to authorities and deportation.[9] Plaintiffs lived in consistent fear of deportation and imprisonment in Vietnam due to Interserco's actions.  First Am. Compl. [Dkt. No. 29] at ¶¶ 22, 26, 27.  Plaintiffs were forced to live in inhumane conditions.  *Id*. at ¶ 24.  Plaintiffs' passports were confiscated to limit Plaintiffs' mobility and ability to travel.  Plaintiffs were constantly monitored and supervised to prevent escape.  Plaintiffs' days were filled with hard work and dreary, isolated living.  *Id*. at ¶ 25.  Every day, a non-Vietnamese speaking employee shuttled Plaintiffs between work and their living quarters, ensuring that Plaintiffs would have little communication with any outsider.  *Id*.  Once a week, the same driver drove Plaintiffs to a supermarket to

---

[9] Interserco and its co-conspirators threatened Plaintiffs with deportation.

buy groceries. *Id*. No transportation was provided to any other destination or for any other purpose, even for church or temple. *Id*. Plaintiffs had little to no contact with the outside world of any kind. *Id*. Moreover, they were repeatedly threatened that if they had contact with outsiders they would be arrested or subjected to violence. *Id*. Plaintiffs and their fellow laborers, though living near the robust Greater Houston Vietnamese-American community, were in essence stranded and completely isolated. *Id*.

For these reasons, Interserco's motion to dismiss Plaintiffs' ATS claim should be denied.

IV. **Plaintiffs' Complaint Sufficiently Alleged a Claim under the Trafficking Victims Protection Reauthorization Act (the "TVPRA").**

Plaintiffs sufficiently alleged a claim under the TVPRA. The fundamental issue under the TVPRA's civil remedies provision, 18 U.S.C. § 1595(a), is whether a defendant knowingly procures or obtains a person's labor through means prohibited by statute, or knowingly benefits from participation in a venture that does so. *See* 18 U.S.C. §§ 1589(a)-(b); 1595(a). The prohibited means include "serious harm or threats of serious harm," "abuse or threatened abuse of law or process," and "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." *Id.* at § 1589(a).

12

Plaintiffs' amended complaint set forth sufficient allegations that Interserco procured the Plaintiffs' labor by prohibited means or knowingly benefited from a participation in a venture that does so. Interserco ensnared Plaintiffs in their fraudulent scheme by promising jobs that would realize each Plaintiff in excess of $120,000 in return for fees of $7,000 to $15,000. First Am. Compl. [Dkt. No. 29] at ¶ 24. To pay these exorbitant fees, Plaintiffs were forced to take on debt at usurious rates and were forced to pledge their home as security for the debt. In many instances, Interserco took possession of the deeds to Plaintiffs' home. *Id.* at ¶ 21. Plaintiffs had no choice but to work for Coast to Coast until they have earned enough wages to repay the debt and interests they had incurred. Not only would they lose their home, Plaintiffs faced incarceration under Vietnam law if they failed to repay the debt they had incurred to pay Interserco's fees. Moreover, upon arrival in the U.S., Interserco's co-conspirators took possession of Plaintiffs' passport thereby limiting their mobility and ability to leave the U.S.

Contrary to Interserco's assertion, liability under the TVPA does not depend on physical coercion. In enacting the TVPA, Congress intended section 1589 to be read broadly to "address the increasingly subtle methods of traffickers" including those "who restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence." H.R.Rep. No. 106–939, at

13

101 (2000) (Conf.Rep.); H.R.Rep.No. 106-949, at 91 (2000) (Conf.Rep.).

Accordingly, section 1589 defines "harm" broadly as:

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2). In other words, someone is guilty of forced labor if he intends to cause a person in his employ to believe that if she does not continue to work, she will suffer the type of serious harm—physical or nonphysical, including psychological, financial, reputation harm—that would compel someone in her circumstances to continue working to avoid that harm. *See, e.g., United States v. Calimlim*, 538 F.3d 706, 712, 714 (7th Cir.2008) (finding threat to stop paying victim's poor family members constitutes serious harm).

Here, Interserco's fraudulent scheme forced Plaintiffs to take on crushing debt, which they could not possibly repay unless they worked for Coast to Coast for the duration of the 30-month employment term. *See Pollock v. Williams*, 322 U.S. 4, 9 (1944); *Pierce v. United States*, 146 F.2d 84, 86 (5th Cir. 1944) (defining peonage as a condition of compulsory service or involuntary servitude based upon a real or alleged indebtedness). Failure to repay the debts Plaintiffs had incurred would result in the loss of their homes and criminal prosecution by the Communist government of Vietnam.

14

Accordingly, Interserco's Motion to Dismiss should be denied.

## V.   **Plaintiffs' Complaint Sufficiently Alleged a Claim for Fraud.**

A pleading is sufficient under Federal Rule of Civil Procedure Rule 9(b) "if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegation." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Plaintiffs' complaint meets the standards of Rule 9(b). Plaintiffs' complaint alleged that Interserco, through its employees and principal (First Am. Compl. [Dkt. No. 29] at ¶¶ 23, 24), made the following representations to Plaintiffs prior to transporting them to the U.S. to work for Coast to Coast:

1) Plaintiffs would have a high paying job in the U.S. for a period of 30 months (*Id.* at ¶ 38);

2) Plaintiffs would be paid $15 per hour, $22.50 per overtime hour for at least 50 hours a week (*Id.* at ¶¶ 28, 38);

3) Plaintiffs would realize approximately $120,750.00 in net earnings (*Id.* at ¶ 28);

4) Interserco would obtain the necessary permits and visas for Plaintiffs to work in the U.S. for 30 months (*Id.* at ¶¶ 23, 28, 38);

5) Plaintiffs' work visas would be guaranteed for the full duration of the 30-month employment term (*Id.* at ¶ 38);

6) Interserco were working with Coast to Coast to coordinate logistics in the U.S. (*Id.* at ¶ 23); and

7)      Interserco would provide travel, comfortable lodging, food, and transportation (*Id.* at ¶¶ 23, 24, 38).

Interserco made these representations to induce Plaintiffs' agreement to be transported to the U.S. and to obtain $7,000 to $15,000 in fees from each Plaintiff. *Id.* at 23.  The living conditions were not as Interserco had represented.  After only eight months into the promised thirty-month work term, Plaintiffs' employment was terminated.   *Id*. at ¶¶ 26, 27.  Interserco terminated Plaintiffs' employment to obtain new fees from a fresh set of laborers.  *Id.* at ¶ 26.  Plaintiffs sufficiently alleged a claim for common law fraud against Interserco.

## <u>LEAVE TO AMEND</u>

To the extent that the Court finds that any of Plaintiffs' allegations are deficient, Plaintiffs' respectfully request that the Court grant Plaintiffs leave to amend such claims/descriptions with any such amendment relating back to the filing date of the original Complaint.  *See, e.g., Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d. Cir. 2002) (generally a plaintiff must be given a right to amend unless an amendment would be futile).

## <u>PRAYER</u>

For all of the foregoing reasons, Plaintiffs hereby respectfully request that the Court deny in its entirety Interserco's motion to dismiss the counts of the complaint.

Dated December 14, 2012

16

Respectfully submitted,

**THE BUZBEE LAW FIRM**

/s/ Anthony Buzbee
ANTHONY BUZBEE
State Bar No.: 24001820
S.D. Admissions No. 22679
JPMorgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone:  (713) 223-5393
Fax: (713) 223-5909
tbuzbee@txattorneys.com

**THE TAMMY TRAN LAW FIRM**

TAMMY TRAN
State Bar No. 20186400
PETE MAI
State Bar No. 24029702
JOHN NA
State Bar No. 24074786
RYAN NGUYEN
State Bar No. 24083570
2915 Fannin
Houston, Texas 77002
Phone: 713-655-0737
Fax: 713-655-0823

**ATTORNEYS FOR PLAINTIFFS**

17

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing was served in accordance with the Federal Rules of Civil Procedure on all counsel of record by fax on this the 14th day of December, 2012.

Charles S. Kelley
Mayer Brown LLP
700 Louisiana Street, Suite 3400
Houston, Texas 77002
(713) 238-2634
Fax: (713) 224-4634
Email: ckelley@mayerbrown.com

_____/s/ Pete Mai_____
PETE MAI

18